# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOALOA SHAMOUN,<br><br>                          Plaintiff,<br><br>v.<br><br>REPUBLIC OF IRAQ, EMBASSY OF THE REPUBLIC OF IRAQ, THE INDEPENDENT HIGH ELECTORAL COMMISSION, and SHEFAN KHOSHO,<br><br>                          Defendants. | Case No.  19-cv-832-MMA (BLM)<br><br>**ORDER GRANTING GOVERNMENT DEFENDANTS' MOTION TO DISMISS** |

On May 3, 2019, Plaintiff Loaloa Shamoun ("Plaintiff") filed a Complaint against Defendants Republic of Iraq ("Republic"), the Embassy of the Republic of Iraq ("Embassy"), the Independent High Electoral Commission ("Commission") (collectively, "Government Defendants"), and Iraqi national Shefan Khosho ("Khosho").  Doc. No. 1.[1]

Government Defendants filed a motion to dismiss.  Doc. No. 16.  Plaintiff then filed a First Amended Complaint ("FAC") pursuant to Federal Rule of Civil Procedure 15(a)(1)(B).  *See* Doc. No. 17 ("FAC").  Plaintiff alleges thirteen causes of action: (1)

---

[1] All citations refer to the pagination assigned by the CM/ECF system.

assault; (2) battery; (3) sexual battery; (4) negligence; (5) negligent infliction of emotional distress; (6) intentional infliction of emotional distress; (7) false imprisonment; (8) respondeat superior; (9) negligent hiring, supervising, and retention; (10) negligence for failure to maintain a reasonably safe workplace; (11) violation of California Labor Code §§ 6400–6404 for failure to maintain a safe work environment; (12) violation of California Civil Code § 51.7 for violence based on sex; and (13) violation of California Civil Code § 51.9 for sexual harassment. *See* FAC.

Government Defendants move to dismiss Plaintiff's claims pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6), Doc. No. 19. Plaintiff filed an opposition to Government Defendants' motion, and Government Defendants replied. *See* Doc. Nos. 20, 23. The Court found the matter suitable for determination on the papers and without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7.1.d.1. Doc. No. 24.

For the reasons set forth below, the Court **GRANTS** Government Defendants' motion to dismiss Plaintiff's causes of action **without leave to amend**.

## I. BACKGROUND[2]

Plaintiff's allegations arise out of a sexual assault that occurred at a polling place in El Cajon, California during the Republic of Iraq's 2018 parliamentary elections. *See* FAC ¶¶ 1, 20. Plaintiff alleges that Khosho sexually assaulted her and subsequently pled guilty to sexual battery. *Id.* ¶¶ 1, 28.

---

[2] Because Government Defendants bring this motion predominately as a facial attack on subject-matter jurisdiction, the Court must accept the allegations of the complaint as true and draw all reasonable inferences in favor of Plaintiff. *See Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009) (citing *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). For the limited factual disputes relevant to jurisdiction, the Court notes where Government Defendants disagree with Plaintiff's allegations. *See* Part II.

Plaintiff alleges that Plaintiff and Khosho were hired as employees of both Commission and Embassy.[3]  *Id.* ¶¶ 20–21  Plaintiff states that Commission—"in coordination with the Embassy"—hired Plaintiff, a dual citizen of the United States and Iraq, as a temporary poll worker in May 2018 "at 115 S. Mollison Ave in El Cajon, California ('El Cajon polling place') to assist in the operation of their polling location for the May 12, 2018 election servicing Iraqis in the Southern California area."  *Id.* ¶¶ 13, 19–20.  Khosho served as "Plaintiff's supervisor and person-in-charge of the El Cajon polling place."  *Id.* ¶ 21.  His job involved "overseeing all operations at the location including the direct daily supervision of approximately 50 poll workers."  *Id.*  Plaintiff states that she and Khosho were paid for their work by "a check issued by the Embassy [and] drawn from the 'Embassy Account.'"  *Id.* ¶ 19.

Plaintiff alleges that Khosho made "threatening and intimidating comments, such as, 'if anyone disobeys me, I will have them fired, right away.'"  *Id.* ¶ 22.  Khosho also allegedly "frequently made degrading remarks regarding the attire, appearance, weight[,] and work ethic of various female employees occasionally directed at Plaintiff or within earshot of Plaintiff and observed by Defendant Khosho's superiors."  *Id.*  Plaintiff avers that Khosho felt "emboldened and secure as the person-in-charge of the polling location, surrounded by [his] family members, women[,] and newly-arrived immigrants while cloaked in the authority of the Republic of Iraq during critical elections."  *Id.*  While at work, Khosho "frequently made unwelcomed, lewd[,] and lascivious comments to Plaintiff."  *Id.* ¶ 23.  Plaintiff "unequivocally and expressly rejected the advances" and attempted to be accompanied by others while with Khosho.  *Id.*  Additionally, Plaintiff claims Khosho "frequently complained that Plaintiff 'talked too much' and 'needed to

---

[3]  As discussed below, Government Defendants state in a signed declaration that Plaintiff and Khosho "were temporary contract employees of only [Commission] in the United States in connection with certain 2018 Iraqi Elections. . . . [They] were not employed by the Republic or the Embassy."  Doc. No. 19-2 at 2; *see also* Doc. No. 19-2 at 51–65 (stating in their employment contracts that both Plaintiff and Khosho were employees of Commission); *infra* Part II.

pay attention' during meetings, including requiring the separation of her from her friends during the workday." *Id.*

On May 10, 2018, Plaintiff claims Embassy and Commission sent Asam, an official, "to observe and oversee the election process." [4] *Id.* ¶ 24. Asam "was a higher-ranking employee than Defendant Khosho and had immediate and direct authority over him." *Id.* Plaintiff alleges Asam failed to intervene despite witnessing Khosho "aggressively interacting and making unwelcomed advances upon Plaintiff during the working hours." *Id.* This included "intimidation, unwelcome touching, aggressive posturing, unwarranted threats of firing, and discipline of Plaintiff." *Id.*

During working hours at the polling place on May 11, 2018, Khosho sexually attacked Plaintiff. *Id.* ¶ 25. The attack occurred on "one of the two days where the polling location was open to the public for voting." *Id.* ¶ 26. Plaintiff alleges the sexual assault proceeded as follows:

> While Plaintiff was alone in the main office of the El Cajon polling place, a room approximately 400 square feet with no windows and one double door, Defendant Khosho approached within one foot of Plaintiff, asked her to speak to him about her failure to pay attention during meetings, and subsequently ask[ed] her to wipe his chin and asked her for a kiss. Plaintiff refused and Defendant advanced upon her, grabbing Plaintiff by the shoulders attempting to kiss Plaintiff. Plaintiff avoided the unwanted kissing and said that she wanted to leave the room. At that time, Defendant Khosho walked to the double doors, locked them and stood in between Plaintiff and her only means of escape. After locking the door, Defendant Khosho continued his assault on Plaintiff despite Plaintiff's numerous pleas of "no" and forcefully grabbed Plaintiff's breasts and genitals over her clothes approximately a dozen times while Plaintiff attempted to fight off the attack. Plaintiff was eventually able to break away from Defendant[,] and

---

[4] As discussed below, Government Defendants state in a signed declaration that "[Commission] records do not identify any employee or official of [Commission] with that name or other person authorized to act in the United States on behalf of [Commission] during the 2018 Iraqi elections." Doc. No. 19-2 at 5; *see also infra* Part II.

4

the Defendant unlocked the door as he exited the room. The entire attack was recorded on a security camera.

*Id.* ¶ 25.

Plaintiff secured the video camera footage of the incident and reported the attack to Asam. *Id.* ¶ 26. "Asam responded that he had noticed that [Khosho] was harassing her and making unwelcomed advances to her the day before. [Asam] then stated that he 'supported her' but refused to provide Plaintiff with his last name." *Id.* Plaintiff had no further contact with Asam. *Id.*

Plaintiff alleges that the sexual battery left her traumatized, and she "has suffered and continues to suffer severe emotional distress as a result of the attack, necessitating over year of therapy from a licensed therapist." *Id.* ¶ 26. Khosho was "initially charged with violations of . . . California Penal Code §§ 243.4(A), 236 - Felony Sexual Battery and Felony False Imprisonment with Violence, respectively." *Id.* ¶ 28. On October 2, 2019, Khosho "pled guilty pursuant to a plea deal to one count of Sexual Battery." *Id.*

Government Defendants move to dismiss Plaintiff's claims based on lack of subject-matter jurisdiction and failure to state a claim.

## II. LEGAL STANDARD

A Federal Rule of Civil Procedure 12(b)(1) motion to dismiss allows for dismissal of a complaint for lack of subject-matter jurisdiction. Federal courts are courts of limited jurisdiction. *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock West, Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989). Subject-matter jurisdiction must exist when the action is commenced. *Morongo Band of Mission Indians v. California State Bd. of Equalization*, 858 F.2d 1376, 1380 (9th Cir. 1988). Further, subject-matter jurisdiction may be raised "at any stage of the litigation." *Arbaugh v. Y&H Corp.*, 546

U.S. 500, 506 (2006); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

A *facial* attack on jurisdiction asserts that the allegations in a complaint are insufficient to invoke federal jurisdiction, whereas a *factual* attack disputes the truth of the allegations that would otherwise confer federal jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In resolving a facial challenge to jurisdiction, a court accepts the allegations of the complaint as true and draws all reasonable inferences in favor of the plaintiff. *Holy See*, 557 F.3d at 1073 (citing *Wolfe*, 392 F.3d at 362). In resolving a factual attack, a court may examine extrinsic evidence "without converting the motion to dismiss into a motion for summary judgment," and a court need not accept the allegations as true. *Safe Air for Everyone*, 373 F.3d at 1039; *see also Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947) ("[W]hen a question of the District Court's jurisdiction is raised . . . the court may inquire by affidavits or otherwise, into the facts as they exist."). "[A] motion to dismiss for lack of jurisdiction under the [Foreign Sovereign Immunities Act] is no different from any other motion to dismiss on the pleadings for lack of jurisdiction, and [courts] apply the same standards in evaluating its merit." *Holy See*, 557 F.3d at 1073.

Here, Government Defendants' motion is predominately a facial attack on subject-matter jurisdiction under the Foreign Sovereign Immunities Act ("FSIA") with limited factual attacks. Government Defendants argue that Plaintiff's allegations taken as true fail to sustain jurisdiction. *See, e.g.*, Doc. No. 19-1 at 16 ("The FAC's allegations, alone, sufficiently establish that the [discretionary function] exclusion applies."), 19 (arguing that the tort exception does not apply because the claims against Government Defendants are not based on acts of that foreign state), 21 (arguing that the tort exception does not apply because the claims are not based on an employee acting within the scope of employment). Because the motion to dismiss predominately constitutes a facial challenge to the Court's jurisdiction and the Court reaches its ultimate disposition based on Plaintiff's allegations, the Court accepts the allegations of the complaint as true and

draws all reasonable inferences in favor of Plaintiff—regardless of Government Defendants' two factual attacks.

The first factual attack addresses Plaintiff's and Khosho's employer. Plaintiff alleges that she was hired by Embassy and Commission and that Khosho "was a full-time employee or officer of the Embassy and the [Commission], and an attorney licensed in the Republic of Iraq." FAC ¶¶ 20–21. However, Government Defendants disagree. In a declaration by the General Director of the Legal Department, Iraqi Ministry of Justice, he states that Plaintiff and Khosho "were temporary contract employees of only [Commission] in the United States in connection with certain 2018 Iraqi Elections. . . . [They] were not employed by the Republic or the Embassy." Doc. No. 19-2 at 2; *see also* Doc. No. 19-2 at 51–65 (stating in their respective employment contracts that both Plaintiff and Khosho were employees of Commission).[5] Because this dispute would otherwise confer jurisdiction over Embassy *depending on* Plaintiff's success in carrying its burden to trigger an exception to the FSIA, the Court finds this a factual challenge. However, the factual attack standard is only necessary to determine jurisdiction over Embassy and Republic *if* an exception to the FSIA applies. Despite the factual disagreement over Khosho's employer, the Court comes to the same conclusion regarding the inapplicability of the alleged FSIA exceptions regardless of whether Khosho was also employed by Embassy. *See infra* Section III.B.

The second factual attack involves Asam's connection to Government Defendants. Plaintiff alleges that Asam "was a higher-ranking employee than [Khosho] and had

---

[5] Government Defendants' motion to dismiss also includes a related request for judicial notice. *See* Doc. No. 19-5. The request asks the Court to take judicial notice of two declarations with accompanying exhibits. Plaintiff responds that the declarations introduce "non-jurisdictional facts" that "have no bearing on subject[-]matter jurisdiction [and] should be disregarded by the Court." Doc. No. 20 at 14–17. For the limited purpose of determining the Court's subject-matter jurisdiction, the Court **GRANTS** Government Defendants' request for judicial notice of Exhibits 8 (Plaintiff's employment contract) and 9 (Khosho's employment contract) of Hanan Munther Niseaf's declaration. Doc. No. 19-2 at 51–57, 59–65. As to the remaining documents, the Court **DENIES** Government Defendants' request for judicial notice, as it did not rely on them in ruling on the instant motion to dismiss.

immediate and direct authority over him." FAC ¶ 24. However, Government Defendants declare that "[Commission] records do not identify any employee or official of [Commission] with that name or other person authorized to act in the United States on behalf of [Commission] during the 2018 Iraqi elections." Doc. No. 19-2 at 5. Despite this dispute, the Court does not rely on this fact in resolving the issue of jurisdiction. Because the truth of the allegation would not otherwise confer federal jurisdiction, the Court accepts the allegations of Asam's employment status as true.

### III. DISCUSSION

**A. Jurisdiction and the Foreign Sovereign Immunity Act**

**1. The Foreign Sovereign Immunity Act**

"The [FSIA] 'provides the sole basis for obtaining jurisdiction over a foreign state in the courts of this country.'" *OBB Personenverkehr AG v. Sachs*, 136 S. Ct. 390, 393 (2015) (quoting *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 443 (1989)); *see also* 28 U.S.C. § 1330; Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602–1611. "The [FSIA] defines 'foreign state' to include a state 'agency or instrumentality,' such as 'an organ of a foreign state or political subdivision thereof.'" *OBB Personenverkehr AG*, 136 S. Ct. at 393 (quoting 28 U.S.C. § 1603(a)–(b)). The FSIA "shields foreign states and their agencies from suit in United States courts unless the suit falls within one of the [FSIA's] specifically enumerated exceptions." *Id.* at 392.

When a claim is brought against a foreign state, a court has a threshold duty to "determine whether the FSIA provides subject[-]matter jurisdiction over the claim." *Siderman de Blake v. Republic of Argentina*, 965 F.2d 699, 706 (9th Cir. 1992) (citing *Liu v. Republic of China*, 892 F.2d 1419, 1424 (9th Cir.1989)). "A federal court lacks subject[-]matter jurisdiction over a claim against a foreign state unless the claim falls within an exception to immunity under the FSIA." *Id.* A court has personal jurisdiction over a foreign state if (1) subject-matter jurisdiction exists and (2) proper service was executed under the FSIA. *Id.* at 704 n.4; *see also* 28 U.S.C. § 1330(b). The FSIA "conflates the usually distinct questions of sovereign immunity, subject[-]matter

8

jurisdiction, and personal jurisdiction." *Corzo v. Banco Cent. de Reserva del Peru*, 243 F.3d 519, 522 (9th Cir. 2001).

"Section 1604 [of the FSIA] creates a 'statutory presumption that a foreign state is immune from suit.'" *Peterson v. Islamic Republic of Iran*, 627 F.3d 1117, 1124 (9th Cir. 2010). As the Ninth Circuit has explained,

> A foreign defendant bears the initial burden to "make a prima facie case that it is a foreign state." "Once the court has determined that the defendant is a foreign state, the burden of production shifts to the plaintiff to offer evidence that an exception applies." "If the plaintiff satisfies her burden of production, jurisdiction exists unless the defendant demonstrates by a preponderance of the evidence that the claimed exception does not apply."

*Packsys, S.A. de C.V. v. Exportadora de Sal, S.A. de C.V.*, 899 F.3d 1081, 1087–88 (9th Cir. 2018) (footnote omitted) (quoting *Peterson*, 627 F.3d at 1124, 1125).

Republic is a foreign state. FAC ¶¶ 2, 10, 14; *see* 28 U.S.C. § 1603(a). Embassy and Commission are foreign state agencies or instrumentalities of Republic. FAC ¶¶ 2, 5, 10, 15–16; *see* 28 U.S.C. § 1603(a)–(b). Based on Plaintiff's own allegations as confirmed by Government Defendants that Republic, Embassy, and Commission are each "foreign states" under the FSIA, Doc. No. 19-1 at 11–12, the Court finds all three Government Defendants are foreign states under the FSIA. Accordingly, Government Defendants have made their prima facie case of their status as foreign states. Now, "the burden of production shifts to the plaintiff to offer evidence that an exception applies." *Packsys*, 899 F.3d at 1088 (quoting *Peterson*, 627 F.3d at 1125).

### 2. Entity Separateness for Jurisdictional Purposes

Before addressing the applicability of the FSIA's immunity exceptions, the Court must first determine which allegations may be attributed to Commission, Embassy, or Republic for the purposes of establishing jurisdiction as to each Defendant. *See Holy See*, 557 F.3d at 1076. Plaintiff alleges tortious acts by Commission, Embassy, and Republic. Government Defendants argue that even if the Court were to find that it has

9

jurisdiction over Commission and Commission were liable, Republic and Embassy could not be held liable. *See* Doc. No. 19-1 at 25. Plaintiff responds that "Embassy oversaw the workplace, [and] had immediate control and supervisory responsibility over Defendant Khosho and the other poll workers." Doc. No. 20 at 13. Further, Plaintiff appears to allege that Commission is under the supervision of Embassy. *See* FAC ¶¶ 19, 22.

The Supreme Court has held that "government instrumentalities established as juridical entities distinct and independent from their sovereign should normally be treated as such." *Rubin v. Islamic Republic of Iran*, 138 S. Ct. 816, 822 (2018) (quoting *First Nat. City Bank v. Banco Para El Comercio Exterior de Cuba* (*Bancec*), 462 U.S. 611, 626–27 (1983), *superseded by statute*, 28 U.S.C. § 1610(g)(1)). Thus, a foreign state and its entities cannot be held liable for the acts of one another. *See id.* The Court presumes independent status between a foreign state and its instrumentalities. *Bancec*, 462 U.S. at 627; *see Rubin*, 138 S. Ct. at 827. For the purpose of the FSIA, the presumption of separateness applies at both the jurisdictional and liability phases. *Holy See*, 557 F.3d at 1079.

There are two exceptions where liability may be warranted: "[1] where a corporate entity is so extensively controlled by the state that a relationship of principal and agent is created *or* [2] where recognizing the state and its agency or instrumentality as distinct entities 'would work fraud or injustice.'"[6] *Rubin*, 138 S. Ct. at 822 (emphasis added) (quoting *Bancec*, 462 U.S. at 629). The Supreme Court declined to create a mechanical formula to determine when the exceptions apply. *Id.* at 823–24 (quoting *Bancec*, 462 U.S. at 633). However, the Courts of Appeals developed five factors (*Banec* factors) to determine whether the exceptions apply. *Id.* at 823. Congress subsequently amended the

---

[6] "The *Bancec* standard is in fact most similar to the 'alter ego' or 'piercing the corporate veil' standards applied in many state courts to determine whether the actions of a corporation are attributable to its owners." *Holy See*, 557 F.3d at 1080.

FSIA, where 28 U.S.C. § 1610(g)(1) "incorporate[d] almost verbatim the five *Bancec* factors." *Id.* The factors include the following:

> (A) the level of economic control over the property by the government of the foreign state;
> (B) whether the profits of the property go to that government;
> (C) the degree to which officials of that government manage the property or otherwise control its daily affairs;
> (D) whether that government is the sole beneficiary in interest of the property; or
> (E) whether establishing the property as a separate entity would entitle the foreign state to benefits in United States courts while avoiding its obligations.

28 U.S.C. § 1610(g)(1); *see also Rubin*, 138 S. Ct. at 822.

As applied to the case here, Republic is a foreign state where Embassy and Commission are agencies or instrumentalities of Republic. FAC ¶¶ 14–16. The Court begins with the presumption of independent status between the three entities. *See Bancec*, 462 U.S. at 627. Thus, Plaintiff carries the burden to prove (1) Commission is so extensively controlled by Embassy or Republic that a relationship of principal and agent is created *or* (2) fraud or injustice would result from treating the three entities as separate. *See Holy See*, 557 F.3d at 1079 (holding that the plaintiff failed to allege facts sufficient to overcome the presumption of juridical separateness). To overcome the presumption of separateness, Plaintiff alleges the following:

> [Republic] has absolute and unqualified power and control over [Embassy] and [Commission].
>
> [Embassy] is a fully-controlled agent, organ, agency or instrumentality of the foreign state of [Republic] . . . .
>
> [Commission] is a fully-controlled agent, organ, agency or instrumentality of the foreign state of [Republic] . . . . [Commission] is an ad hoc

instrumentality of the foreign state of the [Republic] established from time to time for the purposes of conducting elections. [Commission] holds no assets in which to satisfy any judgment.

FAC ¶¶ 14–16. Plaintiff further avers that

Plaintiff, a multi-lingual, dual citizen of the United States and Iraq, was hired as a poll worker by [Commission] in coordination with [Embassy], both of which are fully-controlled agents, organs, agencies and/or instrumentalities of the foreign nation, [Republic]. Plaintiff was paid for her labor by a check issued by [Embassy] drawn from the "Embassy Account." Upon information and belief, Defendant Khosho was similarly paid with an Embassy Check drawn from the Embassy Account.

FAC ¶ 19. In a declaration attached to her opposition brief, Plaintiff adds that "[o]n May 10, 2018, the Embassy sent officials or employees to observe and oversee the election process," where one of the individuals was Asam. Doc. No. 20-1 at 3. "Asam was a higher-ranking employee than [Khosho] and had immediate and direct authority over him." *Id.*

As to the first exception, Plaintiff's conclusory allegations as to extensive control between the three entities lack the factual support necessary to overcome the presumption of separate juridical status. *See Holy See*, 557 F.3d at 1080. Plaintiff fails to plead facts showing *how* Republic or Embassy held extensive control over Commission that would render Commission a mere agent. Although Plaintiff alleges that she was paid through Embassy's account, Plaintiff fails to show how payment through Embassy makes Commission subject to Embassy's extensive control. Plaintiff further relies on conclusory allegations and fails to plead sufficient facts to show how Embassy sending officials to oversee the election process rises to the level of extensive control.

As to the second exception, Plaintiff does not show how treating the entities as separate would perpetuate fraud or injustice. Plaintiff neglects to indicate how the distinct juridical form has been abused. As in *Holy See*, Plaintiff does not allege that

Embassy or Republic have inappropriately used the separate status of the entities to their own benefit or that Commission was formed for the purpose to evade liability. *Id.* at 1080.

Accordingly, the Court finds that the tortious acts of any one entity does not establish the Court's jurisdiction as to the other two entities. Breaching the presumption of government entities' juridical independence is a serious remedy that should be approached with caution. *Cf. Davidson v. Seterus, Inc.*, 21 Cal. App. 5th 283, 305–06 (2018) (citations omitted) (discussing the application of the corporate alter ego doctrine, which involves a similar analysis to the juridical separateness doctrine). Plaintiff fails to demonstrate that this extreme approach is warranted. The Court now turns to whether it can exercise jurisdiction over Commission, Embassy, or Republic for their *separate* alleged tortious actions under the FSIA's exceptions.

**3. The Tort Exception to the FSIA**

The tort exception to the FSIA states the following:

(a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case--

[. . . ]

(5) not otherwise encompassed in paragraph (2) above, in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and *caused by the tortious act or omission of that foreign state or* of any official *or employee of that foreign state while acting within the scope of his office or employment*; except this paragraph shall not apply to--

(A) any claim based upon the exercise or performance or the failure to exercise or perform *a discretionary function* regardless of whether the discretion be abused, or

(B) any claim arising out of malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights . . . .

28 U.S.C. § 1605(a)(5) (emphasis added).

In order to find that a foreign sovereign can be sued under the tortious activity exception, the court must find: (1) that the tortious acts of individual employees of the sovereign were undertaken within the scope of employment, and (2) that the claim is not based upon the exercise or failure to exercise a discretionary function.

*Joseph v. Office of Consulate Gen. of Nigeria*, 830 F.2d 1018, 1025 (9th Cir. 1987).

Plaintiff alleges that the tort exception applies to Government Defendants.  FAC ¶¶ 6–7, 9.  Government Defendants argue that

The non-commercial tort exception does not apply because (1) the claims are "based upon the exercise or performance or the failure to exercise or perform a discretionary function"; (2) there was no "tortious act or omission of that foreign state" because the assault cannot be attributed to the foreign state; and (3) . . . Khosho was not "acting within the scope of his office or employment."

Doc. No. 19-1 at 12.

### i. Respondeat Superior for Khosho's Acts – Tortious Act or Omission *of an Employee Acting Within Scope of Employment*

Government Defendants argue that the tort exception does not apply because "Khosho's assault was not in the course and scope of employment and he was fired." Doc. No. 19-1 at 21.  Plaintiff responds that Khosho's conduct was within the scope of employment because it foreseeable: "Government Defendants knew or should have known that the Defendant was sexually harassing the Plaintiff prior to the date of the attack and her supervisor knew he was sexually harassing her."  Doc. No. 20 at 25.

"[T]he 'scope of employment' provision of the tortious activity exception essentially requires a finding that the doctrine of respondeat superior applies to the tortious acts of individuals. This determination is governed by state law." *Holy See*, 557 F.3d at 1082 (quoting *Joseph*, 830 F.2d at 1025).

Under California's respondeat superior doctrine, "the determination of whether an employee has committed a tort during the course of employment turns on whether: (1) the act performed was either required or incident to his or her duties, or (2) the employee's misconduct could be reasonably foreseen by the employer." *Joseph*, 830 F.2d at 1025 (citing *Clark Equipment Co. v. Wheat*, 92 Cal. App. 3d 503, 520 (1979)). These elements are based on the three policy goals of the respondeat superior doctrine: "preventing future injuries, assuring compensation to victims, and spreading the losses caused by an enterprise equitably." *Lisa M. v. Henry Mayo Newhall Mem'l Hosp.*, 12 Cal. 4th at 304 (1995). "Respondeat superior liability should apply only to the types of injuries that are as a practical matter certain to occur in the conduct of the employer's enterprise." *Randolph v. Budget Rent-A-Car*, 97 F.3d 319, 327 (9th Cir. 1996) (citing *Lisa M.*, 12 Cal. 4th at 299). California courts treat scope of employment as a question of fact; however, it "becomes a question of law when the facts are undisputed and no conflicting inferences are possible." *Perez v. Van Groningen & Sons, Inc.*, 41 Cal. 3d 962, 968 (1986) (first citing *Ducey v. Argo Sales Co.*, 25 Cal. 3d 707, 722 (1979); and then citing *Hinman v. Westinghouse Elec. Co.*, 2 Cal. 3d 956, 963 (1970)).

"The first condition is satisfied if the tort is engendered by or arises from the work. The employee need not have intended to further the employer's interests." *Randolph*, 97 F.3d at 327 (citing *Lisa M.*, 12 Cal. 4th at 297–98). Tortious conduct may be within the scope of employment when an employee violates his duties or ignores express orders. *Wilson v. Drake*, 87 F.3d 1073, 1076 (9th Cir. 1996) (citing *Mary M. v. City of Los Angeles*, 54 Cal. 3d 202, 209 (1991)). For example, an employee's assault or battery falls within the scope of employment "even if it violates the employer's direct orders if it results from 'a dispute arising out of the employment.'" *Id.* (quoting *Carr v. Wm. C.*

*Crowell Co.*, 28 Cal. 2d 652, 654 (1946)).  However, an employer escapes liability where the employee "substantially departs from his duties for purely personal reasons."  *John R. v. Oakland Unified Sch. Dist.*, 48 Cal. 3d 438, 447 (1989) (citation omitted).

The second condition requires that the tort be "in a general way, foreseeable from the employee's duties."  *Randolph*, 97 F.3d at 327 (quoting *Lisa M.*, 12 Cal. 4th at 299).  Foreseeability for respondeat superior occurs "only if '*in the context of the particular enterprise* an employee's conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business."  *Lisa M.*, 12 Cal. 4th at 302 (quoting *Rodgers v. Kemper Constr. Co.*, 50 Cal. App. 3d 608, 619 (1975)).  "The employment must be such as predictably to create the risk employees will commit intentional torts of the type for which liability is sought."  *Id.*; *see also Rita M. v. Roman Catholic Archbishop*, 187 Cal. App. 3d 1453, 1461 (1986) ("The foreseeable event must be characteristic of the activities of the enterprise.").

A number of California courts have generally held that "under the doctrine of respondeat superior, sexual misconduct falls outside the course and scope of employment and should not be imputed to the employer."  *Juarez v. Boy Scouts of Am., Inc.*, 81 Cal. App. 4th 377, 394 (2000) (footnote omitted) (citations omitted that provide examples of the proposition).  However, this is not always the case.  *See Doe v. Uber Techs.*, Inc., 184 F. Supp. 3d 774, 784 (N.D. Cal. 2016) (contrasting *Mary M.*, 54 Cal. 3d at 207, with *Lisa M.*, 12 Cal. 4th at 306).  In *Mary M.*, the court held Los Angeles liable under respondeat superior after a police officer raped a woman after detaining her.  54 Cal. 3d at 207.  In *Lisa M.*, the court found an ultrasound technician to have not acted within the scope of his employment when he committed a sexual battery after completing an examination.  12 Cal. 4th at 306.  Distinguishing these two holdings in *Lisa M.*, the court stated that the police officer's assault was "a generally foreseeable consequence of his position."  *Id.* at 304.  The police officer's "considerable power and authority" made it "neither startling nor unexpected that on occasion an officer will misuse that authority by engaging in assaultive conduct."  *Id.* (quoting *Mary M.*, 54 Cal. 3d at 217).

The *Lisa M.* court emphasized *Mary M.*'s limited holding: "We stress that our conclusion in this case flows from the unique authority vested in police officers. Employees who do not have this authority and who commit sexual assaults may be acting outside the scope of their employment as a matter of law." 12 Cal. 4th at 304 (quoting 54 Cal. 3d at 218 n.11). In stating the limited holding, the *Mary M.* court cites to *Rita M.* 54 Cal. 3d at 218 n.11 (citing 187 Cal. App. 3d 1453). In *Rita M.*, priests were alleged to have entered into a conspiracy to have sexual intercourse with a sixteen-year-old girl, causing her to become pregnant, and then to have secretly transported her to the Philippines. 187 Cal. App. 3d at 1455. The California Court of Appeals held that the Archdiocese could not be held liable for the conduct of the priests because the priests did not commit the tort in the course and scope of employment. *Id.* at 1461.

The Court finds the present case more analogous to *Lisa M.* and *Rita M.* As a preliminary matter, the FAC reveals that the underlying allegations pertain to Khosho's sexual misconduct. *See, e.g.*, FAC ¶ 25. Plaintiff alleges that "the attack was reasonably related to the relationship of the subordinate poll worker to the superior manager for the foreign state Defendants and arose out of a pretense for a meeting relating to discipline for failure to 'pay attention during meetings.'" *Id.* ¶ 79; *see also id.* ¶¶ 23, 25. However, as California courts have emphasized, "sexual misconduct falls outside the course and scope of employment and should not be imputed to the employer." *Juarez*, 81 Cal. App. 4th at 394 (footnote omitted) (citations omitted). *But see Mary M.*, 54 Cal. 3d at 207. For example, the sexual misconduct fell outside the course of employment and thus was not imputed to the employer when a technician sexually assaulted a patient, a teacher molested a student, or a Sunday school teacher molested a student. *Lisa M.*, 12 Cal. 4th at 306; *John R.*, 48 Cal. 3d at 451; *Jeffrey E. v. Cent. Baptist Church*, 197 Cal. App. 3d 718, 722 (1988). The Court finds that Plaintiff's allegations fit within these examples and fail to rise to the level of unique control and authority found in *Mary M.* Therefore, the Court finds that Khosho's sexual misconduct falls outside the course and scope of employment and should not be imputed to his employer. In an abundance of caution, the

Court proceeds by analyzing the two respondeat superior conditions as to the acts pertaining to the sexual assault allegations in addition to the false imprisonment allegations.

Regarding the first condition of the respondeat superior doctrine, just as in *Rita M.* where the court found that the plaintiff could not earnestly argue that "sexual relations with parishioners are either required by or instant to a priest's duties," 187 Cal. App. 3d 1461, the Court here finds that sexual relations with—or false imprisonment of—a polling place employee are not required or incident to a polling place supervisor's duties. Plaintiff fails to establish a nexus between "the nature of the work involved and the type of tort committed." *See Lisa M.*, 12 Cal. 4th at 302. Additionally, a polling place supervisor does not have the power or control over polling place employees as does a police officer have over criminal suspects. *See Mary M.*, 54 Cal. 3d at 218 n.11. Moreover, despite any job-created authority vested in Khosho by Commission or Embassy, employees do not act within the scope of employment when they abuse job-created authority over others for purely personal reasons. *Farmers Ins. Grp. v. Cty. of Santa Clara*, 11 Cal. 4th 992, 1013 (1995). Regardless of any particular vulnerability of Plaintiff, an employer's liability under respondeat superior focuses on "the extent to which the tort of the employee is incident to his employment" and not the victim's vulnerability. *Xue Lu v. Powell*, 621 F.3d 944, 949 (9th Cir. 2010) (interpreting *Lisa M.*, 12 Cal. 4th at 302 n.6). Therefore, the Court finds that Plaintiff has not carried her burden as to the first condition.

As to the second condition of the respondeat superior doctrine, the Court finds that Khosho's conduct could not have been reasonably foreseen by Commission. Sexual assault and false imprisonment of a polling place employee by a supervisor is not characteristic of facilitating an election. *Cf. Rita M.*, 187 Cal. App. 3d at 1461 (noting that "mere foreseeability" is insufficient). Plaintiff fails to provide the Court with facts that show that the employment at a polling place would predictably create the risk of sexual assault or false imprisonment. *See Lisa M.*, 12 Cal. 4th at 302–03.

Accordingly, the Court finds that the tort exception does not apply to deprive Commission—or Embassy when taking Plaintiff's allegations as true—of immunity because Khosho was not acting in the course and scope of employment as to the causes of action grounded in the sexual assault and false imprisonment. Further, even if the tort exception did apply, Republic would still retain immunity because Plaintiff fails to rebut the presumption of juridical separateness and fails to allege specific tortious actions against Republic. *See supra* Section III.A.2.

### ii. Negligent Hiring, Supervising, and Retention; Failure to Maintain Safe Work Environment – Tortious Act or Omission *of that Foreign State*

Government Defendants argue that "the tort exception does not apply because the claims against the Government Defendants are not based on a 'tortious act or omission *of that foreign state*.'" Doc. No. 19-1 at 19 (emphasis added) (quoting 28 U.S.C. § 1605(a)(5)). Government Defendants emphasize that Khosho lacked actual authority to sexually assault Plaintiff. *Id.* Government Defendants assert that Khosho's actions "cannot be imputed or attributed to the Government Defendants to satisfy the 'of the foreign state' requirement" without actual authority. *Id.* Plaintiff responds that "[r]atification makes the Government Defendants directly liable for the tortious act at issue." Doc. No. 20 at 26. The Court proceeds by assessing (1) whether Khosho's individual tortious actions can be attributed to Government Defendants as "actions of that foreign state" or (2) whether the various negligence causes of action directly against Government Defendants are subject to the tort exception.

### a. Khosho's Individual Actions as "Actions of that Foreign State"

As to whether Khosho acted as an agent of Government Defendants, Government Defendants' argument rests on case law involving the commercial activity exception. *See* Doc. No. 19-1 at 19–20. They assert that the reasoning underlying the actual authority requirement in the commercial activity context "applies to the other FSIA exceptions." *Id.* at 20. The Ninth Circuit has held that "acts undertaken without actual authority are not acts 'of the foreign state,' regardless of whether the agent appeared to have the

authorization of the sovereign." *Packsys*, 899 F.3d at 1089 (quoting 28 U.S.C. § 1605(a)(2)); *see also Phaneuf v. Republic of Indonesia*, 106 F.3d 302, 307–08 (9th Cir. 1997). The Ninth Circuit noted that this "conclusion applies with equal force regardless of the commercial *or noncommercial character* of the act in question." *Packsys*, 899 F.3d at 1091 (emphasis added).

The Court finds that the "the tortious act or omission of that foreign state" clause requires an agent of the state to have actual authority to trigger the tort exception. Finding otherwise would result in inconsistent application of almost identical language found elsewhere within § 1605(a). *Compare* 28 U.S.C. § 1605(a)(5) ("the tortious act or omission of that foreign state"), *with* 28 U.S.C. § 1605(a)(2) ("commercial activity . . . by the foreign state; . . . commercial activity of the foreign state"). Plaintiff fails to allege that Republic, Embassy, or Commission granted actual authority to Khosho to commit the alleged tortious acts against Plaintiff. Plaintiff's argument regarding ratification is unavailing. Actual authority is required to satisfy "actions of that foreign state." *Packsys*, 899 F.3d at 1089; *Phaneuf*, 106 F.3d at 307–08. The Court finds that ratification does not meet the actual authority standard because Government Defendants did not empower Khosho to commit the tortious acts. Therefore, Khosho's individual actions cannot be attributed to Government Defendants as "actions of that foreign state."

### b. Actions Performed by Government Defendants Themselves - Discretionary Function Exclusion

The Court now examines whether the various negligence causes of action directly against Government Defendants are subject to the tort exception. Even if the alleged negligence comes within the language of the tort exception, the Court must determine whether the allegations are barred as "discretionary functions." *See Holy See*, 557 F.3d at 1083. Government Defendants argue that the tort exception does not apply because the discretionary function exclusion forecloses Plaintiff's causes of action against them. Doc. No. 19-1 at 15. Plaintiff responds that Government Defendants owed her a duty of care as their employee. *See* Doc. No. 20 at 24. Plaintiff notes that the discretionary

function exclusion does not save Government Defendants' immunity because "Government Defendants provide no authority that the failure to maintain a reasonably safe *workplace* or that subjecting **their employee** to (and taking reasonable steps to prevent) sexual harassment, sexual battery or the such is an outgrowth of any discretionary function." *Id.*

"The discretion function exclusion shields foreign sovereigns from tort claims 'based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused.'" *Holy See*, 557 F.3d at 1083 (quoting 28 U.S.C. § 1605(a)(5)(A)). The Ninth Circuit looks to the Federal Tort Claims Act ("FTCA") to interpret the FSIA's discretionary function exclusion given the parallels between the two statutory schemes. *Id.*; *see also* 28 U.S.C. § 2680(a). A foreign state "is protected by the discretionary function exclusion if the challenged action meets two criteria: (1) it is 'discretionary in nature' or 'involve[s] an element of judgment or choice' and (2) 'the judgment is of the kind that the discretionary function exception was designed to shield.'" *Holy See*, 557 F.3d at 1083–84 (quoting *United States v. Gaubert*, 499 U.S. 315, 322–23 (1991). The foreign state carries the burden to prove that the discretionary function exclusion applies; however, "a plaintiff must advance a claim that is facially outside the discretionary function exception in order to survive a motion to dismiss." *Id.* at 1084 (quoting *Prescott v. United States*, 973 F.2d 696, 702 n.4 (9th Cir. 1992)).

The first factor focuses "on the nature of the actions taken and on whether they are susceptible to policy analysis," *not* an employee's "subjective intent in exercising the discretion conferred by statute or regulation." *Gaubert*, 499 U.S. at 325. Safety standards remove discretion when the standard "is embodied in a *specific* and *mandatory regulation or statute* which creates clear duties incumbent upon the governmental actors." *Kennewick Irr. Dist. v. United States*, 880 F.2d 1018, 1026 (9th Cir. 1989) (third emphasis added) (interpreting the discretionary function exclusion regarding safety and engineering standards under the FTCA); *see also Berkovitz by Berkovitz v. United States*,

486 U.S. 531, 536 (1988).  Similarly, discretion may be removed—and thus open a foreign state to jurisdiction—"by a specific mandatory governmental *policy* duly adopted under authority delegated by statute or regulation."  *Kennewick Irr. Dist.*, 880 F.2d at 1026.  Finally, discretion may further be removed "if the government incorporates specific safety standards in a *contract* which imposes duties on the government's agent."  *Id.* (emphasis added).  Exclusion of immunity under the discretionary function exception is based on the rationale that once a foreign state "adopts safety standards in the form of specific and mandatory regulations or policy, employees do not have any discretion to violate these standards."  *Id.* 1026–27.

As to the second factor, the discretionary function exclusion was designed to shield "only those decisions 'grounded in social, economic, and political policy.'"  *Soldano v. United States*, 453 F.3d 1140, 1145 (9th Cir. 2006) (quoting *Childers v. United States*, 40 F.3d 973, 974 (9th Cir. 1994)) (interpreting the discretionary function exclusion under the FTCA).  The Ninth Circuit has held that the exclusion was designed to protect decisions such as "whether and how to retain and supervise an employee" and "whether to warn about [an employee's] dangerous proclivities."  *Holy See*, 557 F.3d at 1084; *see also Vickers v. United States*, 228 F.3d 944, 950 (9th Cir. 2000).

Examining the first factor, Plaintiff fails to allege the existence of a regulation or statute, policy, or contractual provision that is specific and mandatory on Commission, Embassy, or Republic.  *See Holy See*, 557 F.3d at 1084; *Kennewick Irr. Dist.*, 880 F.2d at 1026.  Plaintiff "does not state the terms of this alleged policy, or describe any documents, promulgations, or orders embodying" a policy.  *Holy See*, 557 F.3d at 1084.  Without pointing to a specific and mandatory standard that creates clear duties on the government actors as to hiring, supervising, retaining, and maintaining a safe work environment, any decision regarding the context surrounding these claims appears based on exercising discretionary policy judgments.

As to the second factor, Plaintiff's allegations pertaining to Government Defendants themselves fall into the type of judgment the discretionary function exclusion

was designed to shield.  As held by the Ninth Circuit, decisions over hiring, supervision, retention, safe working environment, and warning over an individual's dangerousness are discretionary acts that the exclusion was designed to protect.  *See id.* at 1084–85.

Accordingly, Plaintiff's allegations on their face do not constitute a claim outside the discretionary function exclusion, *see id.* at 1084, and thus Plaintiff's allegations pertaining to torts committed by Commission—or Embassy when taking Plaintiff's allegations as true—are subject to dismissal.  Further, even if the discretionary function exclusion did not apply, Republic would still retain immunity because Plaintiff fails to rebut the presumption of juridical separateness and fails to allege specific tortious actions against Republic.  *See supra* Section III.A.2.

### 4. The Commercial Activity Exception to the FSIA

Plaintiff alleges that the tortious acts arose "in connection with a commercial activity performed within the United States."  FAC ¶ 8.  Government Defendants argue that the commercial activity exception does not apply because the FAC sounds in tort and, thus, is not based upon a commercial activity.  Doc. No. 19-1 at 24.  Further, they assert that "Khosho's sexual assault was not 'commercial activity.'"  *Id.*  Plaintiff responds that her claims—specifically causes of action seven through twelve—trigger the commercial activity exception because they are based on her employment as "a poll worker, directing people to queues and providing information to the voting Iraqis in El Cajon, California."  Doc. No. 20 at 20–21.  She argues that several of her employment-based causes of action "are predicated on the commercial activity of employment and primarily rely upon the negligence or failure to adhere to duties owed by employers to employees."  *Id.* at 21.

The commercial activity exception to the FSIA states the following:

(a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case--

[ . . . ]

> (2) in which *the action is based upon a commercial activity* carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States . . . .

28 U.S.C. § 1605(a)(2) (emphasis added). The FSIA defines "commercial activity" as "either a regular course of commercial conduct or a particular commercial transaction or act. The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose." 28 U.S.C. § 1605(d). "Although a contract to purchase goods or services may be presumptively commercial, a contractual activity should not be designated as 'commercial' without first examining whether the activity is of a kind in which a private party might engage." *Joseph*, 830 F.2d at 1024.

To determine what an action is "based upon," a court must examine "the 'particular conduct' that constitutes the 'gravamen' of the suit." *OBB Personenverkehr AG*, 136 S. Ct. at 396 (interpreting *Saudi Arabia v. Nelson*, 507 U.S. 349, 357 (1993)). For example, *Saudi Arabia v. Nelson* involved a couple suing Saudi Arabia and its state-owned hospital for negligence and intentional tort "stemming from the husband's allegedly wrongful arrest, imprisonment, and torture by Saudi police while he was employed at a hospital in Saudi Arabia." *Id.* at 395 (quoting *Nelson*, 507 U.S. at 351, 353–54). In reaching its holding that the action was not based upon a commercial activity, the Court explained:

> Even taking each of the Nelsons' allegations about Scott Nelson's recruitment and employment as true, those facts alone entitle the Nelsons to nothing under their theory of the case. The Nelsons have . . . alleged . . . personal injuries caused by the defendants' intentional wrongs and by the defendants' negligent failure to warn Scott Nelson that they might commit

those wrongs.  Those torts, and not the arguably commercial activities that preceded their commission, form the basis for the Nelsons' suit.

*Id.* at 396 (quoting *Nelson*, 507 U.S. at 358).

Here, the Court finds Plaintiff's FAC faces the same result as the plaintiffs' allegations in *Nelson*.  Even taking Plaintiff's allegations as true, Plaintiff alleges personal injuries caused by intentional wrongs, negligent acts and omissions, and statutory violations all grounded in tort.  Thus, Plaintiff's claims are "based upon" tort allegations—and not commercial activities even if Plaintiff's employment were an "economic activity."  Therefore, the commercial activity exception does not apply to remove immunity.

Plaintiff's argument that her employment-based claims are predicated on the commercial activity of employment with Government Defendants is unavailing.  Plaintiff quotes the Ninth Circuit to argue "when the Court is presented with claims that are not purely within a commercial context, 'a plaintiff's claim is based upon [commercial] activities [if the commercial activity] are [sic] elements of the claim that would entitle the plaintiff to relief.'"  Doc. No. 20 at 20 (quoting *Holden v. Canadian Consulate*, 92 F.3d 918, 920 (9th Cir. 1996) (citing, in turn, *Nelson*, 507 U.S. at 356–57)).  Plaintiff relies on this element-based approach to argue that causes of action seven through twelve each rely upon the element of her employment status with Government Defendants.  *See id.* at 21.  However, the Supreme Court held that its "analysis in *Nelson* is flatly incompatible with a one-element approach"[7] adopted by the Ninth Circuit.  *OBB Personenverkehr AG v. Sachs*, 136 S. Ct. at 396.  The Supreme Court emphasized that "*Nelson* instead teaches that an action is 'based upon' the 'particular conduct' that constitutes the '*gravamen*' of

---

[7]  "A one-element test necessarily requires a court to identify all the elements of each claim in a complaint before that court may reject those claims for falling outside § 1605(a)(2)."  *OBB Personenverkehr AG*, 136 S. Ct. at 396.

the suit.  *Rather than individually analyzing each of the Nelsons' causes of action, we zeroed in on the core of their suit.*"  *Id.* (emphasis added).  As noted above, the Court finds that that the gravamen of Plaintiff's suit is grounded in tort and not any commercial employment relationship with Commission or Embassy.  Finding otherwise "would effectively thwart the [FSIA's] manifest purpose to codify the restrictive theory of foreign sovereign immunity" through a "semantic ploy" where "a plaintiff could recast virtually any claim of intentional tort committed by sovereign act as a claim of failure to warn, simply by charging the defendant with an obligation to announce its own tortious propensity before indulging it."  *Nelson*, 507 U.S. at 363; *see also OBB Personenverkehr AG*, 136 S. Ct. at 396; *O'Bryan v. Holy See*, 556 F.3d 361, 380 (6th Cir. 2009).

Accordingly, the gravamen of Plaintiff's FAC sounds in, and is based upon, tort, which renders the commercial activity exception inapplicable to deprive Commission— or Embassy when taking Plaintiff's allegations as true—of immunity.  Further, even if the commercial activity exception did apply, Republic would still retain immunity because Plaintiff fails to rebut the presumption of juridical separateness and fails to allege specific tortious actions against Republic.  *See supra* Section III.A.2.

### 5. The Waiver Exception to the FSIA

Plaintiff alleges that "[Government Defendants] have waived any claim to immunity via express provisions in the employment contract with Plaintiff."  FAC ¶ 4. Plaintiff elaborates in her opposition brief that both Plaintiff's and Khosho's employment contracts contain language indicating waiver.  *See* Doc. No. 20 at 17–19.  Government Defendants reply that the waiver exception does not apply because they have not waived sovereign immunity and Plaintiff's employment contract did not contain a waiver of immunity.  Doc. No. 19-1 at 22.  Government Defendants argue that Khosho's actions do not fall under the language of the at-issue contract clause and that the clause does not constitute a waiver because it indicates only the employee's—and not Government Defendants'— amenability to suit.  *See* Doc. No. 23 at 13–14.

The waiver exception to the FSIA states the following:

19-cv-832-MMA (BLM)

(a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case--

>(1) in which the foreign state has *waived its immunity either explicitly or by implication*, notwithstanding any withdrawal of the waiver which the foreign state may purport to effect except in accordance with the terms of the waiver . . . .

28 U.S.C. § 1605(a)(1) (emphasis added). The "waiver exception is narrowly construed." *Joseph*, 830 F.2d at 1022. Moreover, courts will "rarely" find waiver "without *strong evidence* that this is what the foreign state *intended*." *Corporacion Mexicana de Servicios Maritimos, S.A. de C.V. v. M/T Respect*, 89 F.3d 650, 655 (9th Cir. 1996), *as amended on denial of reh'g* (Aug. 28, 1996) (quoting *Rodriguez v. Transnave Inc.*, 8 F.3d 284, 287 (5th Cir. 1993)) (citing *Frolova v. Union of Soviet Socialist Republics*, 761 F.2d 370, 377 (7th Cir. 1985)). "[A] sovereign party has waived immunity where a contract *specifically* states that the laws of a jurisdiction within the United States are to govern the transaction." *Packsys*, 899 F.3d at 1093 (quoting *Joseph*, 830 F.2d at 1022). A mere contractual agreement between a foreign state and another party does not waive sovereign immunity. *Joseph*, 830 F.2d at 1022.

However, the governing law need not be explicitly mentioned to waive immunity. *Id.* Implicit waiver typically falls under three situations: "(1) a foreign state has agreed to arbitration in another country; (2) a foreign state has agreed that a contract is governed by the law of a particular country; and (3) a foreign state has filed a responsive pleading in a case without raising the defense of sovereign immunity." *M/T Respect*, 89 F.3d at 655 (quoting *Joseph*, 830 F.2d at 1022). However, this list is not exclusive because implicit waiver may also be found where an agreement "*contemplates* adjudication of a dispute by the United States courts." *Barapind v. Gov't of Republic of India*, 844 F.3d 824, 829 (9th Cir. 2016) (emphasis added) (quoting *Joseph*, 830 F.2d at 1023).

Here, Plaintiff has the burden to offer evidence that an exclusion applies to remove immunity. *See Packsys*, 899 F.3d at 1087–88 (quoting *Peterson*, 627 F.3d at 1124–

1125).  To carry her burden of showing that Government Defendants waived immunity,
Plaintiff offers Plaintiff's and Khosho's employment contracts.  *See* Doc. No. 20 at 17–
18; *see also* Doc. No. 19-2 at 52, 60 (employment contracts).  The clause in both
contracts under the section heading "**Third: Obligations of the Second Party**"—where
"Second Party" is defined as Plaintiff and Khosho in their respective contracts and "First
Party" is defined as Commission—states

> 4- In case [the Second Party] performs any action or behavior that affects the
> safety and integrity of the electoral process or he manipulates the elections'
> results, the First Party shall have the right to take all legal and disciplinary
> measures against him and refer him to the competent Courts according to the
> laws in force.

Doc. No. 19-2 at 52, 60.

Plaintiff points to the *Joseph* case to persuade the Court to find waiver.  *See* Doc.
No. 20 at 17–19.  In *Joseph*, the Ninth Circuit asked whether a lease agreement between
an individual and foreign state implicitly waived sovereign immunity.  830 F.2d at 1022.
The lease provision in *Joseph* stated

> In the event that any action shall be commenced by either party hereto
> arising out of, or concerning this lease or any right or obligation derived
> therefrom, then in addition to all other relief at law or equity, the prevailing
> party shall be entitled to recover attorney's fees as fixed by the court.

*Id.*  The Court ultimately held that the provision "constitut[ed] a waiver of sovereign
immunity."  *Id.*  The Ninth Circuit reasoned that despite the agreement not specifying
which jurisdiction's laws governed the lease, a contract need not specifically state the
controlling law for the waiver exception to attach.  *Id.* at 1023.  Rather, "[w]here an
agreement *contemplates* adjudication of a dispute by the United States courts, the waiver
exception should be applied, regardless of whether the governing law is explicitly

identified." *Id.* (emphasis added). The Ninth Circuit held that given "the wholly local nature of the transaction, it is virtually inconceivable that the Consulate contemplated that adjudication of disputes would occur in a court outside of the United States." *Id.* However, the court placed an important caveat on its waiver holding. It noted that the vagueness of the waiver of the lease provision and the need to construe the waiver exception narrowly made the court "reluctant to rest [its] holding—that the district court has jurisdiction over Joseph's basic claims—solely on the waiver exception."[8] *Id.* at 1023 n.6.

The Court notes three important differences between the facts presented in the employment contracts here and the lease provision in *Joseph*. First, the employment contract here gives Commission the unilateral power to bring suit whereas the *Joseph* provision allowed either party to bring suit. The employment contract here clearly gives *only* "the First Party"—the Commission—"the right to take all legal and disciplinary measures." Doc. No. 19-2 at 52, 60. The lease term in *Joseph* envisioned suits by *both* the foreign state *and* the individual: "In the event that any action shall be commenced by either party . . . ." 830 F.2d at 1022. Regardless of this difference, the following two differences are dispositive because they indicate only weak evidence of intent to waive immunity after narrowly construing the scope of the alleged waiver. *See M/T Respect*, 89 F.3d at 655 (noting that the waiver exception is narrowly construed and waiver generally requires strong evidence that the foreign state intended to waive its immunity).

Second, the employment contract here does not concern a wholly local matter that contemplates adjudication by United States courts, as was the case under *Joseph*'s landlord-tenant lease provision. The employment provision here concerns "the safety and integrity of the electoral process" for an Iraqi parliamentary election. Doc. No. 19-2 at

---

[8] In particular, the Ninth Circuit expressed uncertainty "whether the [foreign state] *knowingly and intentionally* agreed to waive sovereign immunity, or whether under the circumstances in this case such actual knowledge and intent is necessary for the application of the waiver exception." *Id.* 1023 n.6

52, 60.  The lease provision in *Joseph* concerned a landlord-tenant dispute where "it [was] virtually inconceivable that the Consulate contemplated that adjudication of disputes would occur in a court outside of the United States" given the "wholly local nature of the transaction."  830 F.2d at 1022.  Here, the employment clause is wholly foreign in nature given that its contents refer exclusively to the operation of a foreign election.  Whereas a landlord-tenant dispute could not readily be contemplated to be adjudicated outside of the United States, an action regarding the safety and integrity of a foreign election likely contemplates adjudication in the foreign state responsible for the election and the maintenance of its own election laws

Third, there is not a direct connection between Commission's activities in American courts and Plaintiff's allegations.  In holding that a plaintiff presented sufficient evidence to show implied waiver where the foreign state "deliberately involved United States Courts in its efforts to persecute [a plaintiff]," the Ninth Circuit looked for a direct connection between the waiver and the activity at issue.  *Siderman de Blake*, 965 F.2d at 722.  The Ninth Circuit reasoned,

> [i]f Argentina has engaged our courts *in the very course of activity for which the [plaintiffs] seek redress*, it has waived its immunity as to that redress.
>
> As noted, Argentina will have an opportunity to rebut the [plaintiff's] evidence on remand.  We do not suggest that because Argentina may have implicitly waived its immunity in this suit, any foreign sovereign which takes actions against a private party in our courts necessarily opens the way to all manner of suit by that party.  To support a finding of implied waiver, there must exist a *direct connection between the sovereign's activities in our courts and the plaintiff's claims for relief.*

*Id.* (emphasis added); *see also In re Estate of Ferdinand Marcos Human Rights Litig.*, 94 F.3d 539, 547 (9th Cir. 1996) ("[T]o support a finding of implied waiver, there must exist a direct connection between the sovereign's activities in U.S. courts and the plaintiff's claims for relief.").  Here, as to the scope of the employment contract, the terms

themselves are limited to the circumstance where "the [Second Party] performs any action or behavior that affects the safety and integrity of the electoral process or he manipulates the elections' results." Doc. No. 19-2 at 52, 60. In *Joseph*, the lease provision anticipated suits "arising out of, or concerning this lease or any right or obligation derived therefrom." 830 F.2d at 1022. Whereas the action in *Joseph* involved underlying liability concerning a lease and the contract provision envisioned suits arising from the lease, Plaintiff's underlying allegations here concern tortious conduct—*but* the employment contract provision envisions suits arising from election law and the operation of an election. Even if the Court found that the employment contract's mere mention of possible suit made Commission amenable to the Court's jurisdiction, the Court would still be unable to find waiver because there is no direct connection between Commission's contractual power to bring suit over electoral integrity and Plaintiff's tort-based allegations.

Accordingly, the Court finds that the waiver exception does not apply to deprive Commission—or Embassy when taking Plaintiff's allegations as true—of immunity. Further, even if the waiver exception did apply, Republic would still retain immunity because Plaintiff fails to rebut the presumption of juridical separateness and fails to allege specific tortious actions against Republic. *See supra* Section III.A.2.

### 6. Jurisdictional Discovery

Plaintiff requests the Court grant jurisdictional discovery if the Court finds in favor of Government Defendants. Doc. No. 20 at 30. Specifically, Plaintiff seeks "written discovery to determine the applicability of FEHA, depositions of Defendant Khosho to investigate who he reported to, the basis of his termination and the Government Defendants' investigation into his claims and other measures to determine the identity and role of Official Asam." *Id.* Government Defendants counter that the Court should deny Plaintiff's request. Doc. No. 23 at 15. They argue that "[t]he FSIA precludes additional discovery" and that they "have already, and voluntarily, provided discovery responses and documents on the jurisdictional issues." *Id.*

"To the extent that the jurisdictional facts are disputed . . . , the parties should be allowed to conduct discovery for the limited purpose of establishing jurisdictional facts before the claims can be dismissed." *Siderman de Blake*, 965 F.2d at 713.

> Because of the "delicate balance between permitting discovery to substantiate exceptions to statutory foreign sovereign immunity and protecting a sovereign's or a sovereign agency's legitimate claim to immunity from discovery," jurisdictional discovery in FSIA cases "should be ordered circumspectly and only to verify allegations of specific facts crucial to an immunity determination."

*Packsys*, 899 F.3d at 1094 (quoting *Alpha Therapeutic Corp. v. Nippon Hoso Kyokai*, 199 F.3d 1078, 1088 (9th Cir. 1999), *opinion withdrawn sub nom. Alpha Therapeutic Corp. v. Kyokai*, 237 F.3d 1007 (9th Cir. 2001)).

Plaintiff's jurisdictional discovery request does not identify facts crucial to an immunity determination. The Court made its findings even taking Plaintiff's allegations as true. The Court did not rely on disputed facts in reaching its holding. *See supra* Part II. Even if Khosho were employed by both Commission and Embassy and even if Asam were employed by Commission or Embassy, the Court's holding would remain unchanged. Therefore, given that these specific facts are not crucial to an immunity determination, the Court finds jurisdictional discovery inappropriate. *See Packsys*, 899 F.3d at 1094.

Accordingly, the Court **DENIES** Plaintiff's request for jurisdictional discovery.

## B. Failure to State a Claim

In addition to its arguments over improper jurisdiction, Government Defendants also move to dismiss pursuant to Rule 12(b)(6). Doc. No. 19-1 at 30–33. Because the Court lacks subject-matter jurisdiction, the Court must dismiss the case. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction,

the court must dismiss the action.").  Accordingly, the Court declines to rule on the merits of Government Defendants' Rule (12)(b)(6) motion.[9]

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Government Defendants' motion to dismiss Plaintiff's causes of action **without leave to amend**.  Further, the Court **ORDERS** the Clerk of Court to terminate this action as to Government Defendants.

**IT IS SO ORDERED**.

Dated: February 26, 2020

Hon. Michael M. Anello
United States District Judge

---

[9]  The Court similarly declines to rule on the merits of Government Defendants' argument regarding diplomatic immunity.  *See* Doc. No. 19-1 at 33; Doc. No. 23 at 15.